**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Zakka Moses,

Petitioner,

v.

Loretta Lynch, Attorney General; Jeh Johnson, Secretary of the Department of Homeland Security; Jason Sieving, U.S. ICE, Field Office for the St. Paul Filed Office; and Warden of Immigration Detention Facility;

Respondents.

No. 15-cv-4168 (PAM/JJK)

**REPORT AND RECOMMENDATION**

---

Nixon Ayeni, Esq., Law Office of Nixon Ayeni, counsel for petitioner.

Ana H. Voss, Esq., Chad A. Blumenfield, Esq., and D. Gerald Wilhelm, Esq., Assistant United States Attorneys, counsel for respondents.

---

JEFFREY J. KEYES, United States Magistrate Judge

In this proceeding, the petitioner Zakka Moses, a native and citizen of Nigeria, seeks a writ of habeas corpus. Moses asks the Court to direct the respondents to immediately release him from custody and he seeks a preliminary and permanent injunction prohibiting the respondents from detaining him unlawfully in the future. (Doc. No. 1, Pet., Prayer for Relief ¶¶ 2–3.) Moses has been in the custody of immigration officials since May 22, 2014, pending his removal from the United States. He asserts that he is in custody in violation of the laws of the United States because the Office of Immigration and Customs Enforcement ("ICE") has been unable to remove him to Nigeria, his removal from the United States is not likely to occur in the reasonably foreseeable future, and his continued custody has exceeded the presumptively reasonable six-month period approved by the Supreme Court for pre-removal detention of aliens

in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Pet. 4–6.) The respondents assert that the only reason Moses is still in the United States is that he has "intentionally frustrated his removal" by refusing to comply with law enforcement officials' commands and behaving confrontationally and aggressively during previous attempts to remove him to Nigeria. (Doc. No. 11, Resp. to Pet. 1–2.) For the reasons that follow, the Court recommends that Moses's habeas petition be denied.

**BACKGROUND**

On May 22, 2014, ICE took Moses into custody. (Pet. ¶¶ 6, 11; Doc. No. 12, Robinson Decl. ¶ 4.) The next day, ICE served him with a notice to appear before an immigration judge. (Robinson Decl. ¶ 4.) On November 10, 2014, the immigration judge ordered Moses removed from the United States. (Pet. ¶ 11; Robinson Decl. ¶ 6.) The Board of Immigration Appeals in the Executive Office for Immigration Review ("BIA") dismissed his appeal of the immigration judge's removal order on March 12, 2015. (Robinson Decl. ¶¶ 6–7.) On March 19, 2015, Scott Baniecke, an ICE Field Office Director, issued a warrant for Moses's removal and deportation, and ICE sent a formal request to Nigeria for a travel document for Moses. (*Id.* ¶¶ 8–9.) The next day, ICE sent Moses a "Warning for Failure to Depart" in which ICE warned Moses that he might face criminal consequences if he refused to comply with efforts to remove him to Nigeria. (*Id.* ¶ 10.)

ICE had not received a travel document for Moses from Nigerian authorities by June 10, 2015, so ICE served him with a custody-review decision that explained ICE would continue to hold Moses in custody beyond the expiration of a 90-day removal period. (Robinson Decl. ¶ 11.) ICE made additional efforts to obtain a travel document from Nigeria in July and September of 2015. (*Id.* ¶ 12.) The Nigerian Embassy sent ICE a valid travel document for Moses on November 18, 2015. (*Id.* ¶ 15.)

Moses filed his habeas petition on November 25, 2015. (Pet.; Robinson Decl. ¶ 16.) Shortly after it received the valid travel document, on December 1, 2015 ICE attempted to remove Moses to Nigeria. (Robinson Decl. ¶ 17.) ICE took Moses to the Minneapolis-St. Paul Airport ("MSP"), but Moses "began yelling at officers and became belligerent at the ticket counter at the MSP airport. [He] refused to comply with ICE officers and MSP Airport Police's requests that he lower his voice. [He] demanded to talk with his lawyer, mother, and stated that he would not go back to Nigeria." (*Id.* ¶ 18.) ICE ceased its efforts to remove Moses on December 1, 2015 in response to his behavior at the airport. (*Id.*)

After the incident at the MSP Airport, ICE served Moses with another warning for failure to comply with efforts to deport him. (*Id.* ¶ 19.) ICE tried to deport Moses again on December 15, 2015, but again he refused to go to Nigeria. (*Id.* ¶¶ 20–22.) Moses told officers "that he would not go back to Nigeria until he saw a federal judge," that he would not see a specific judge identified as "Judge Nickerson," and that the officers "shouldn't bother even trying to take him to the airport because he was not going to Nigeria." (*Id.* ¶ 21.) "On December 15, 2015, three different officers attempted to speak with M[oses]. During each attempt, [Moses] was confrontational and spoke aggressively[, and] [t]he removal mission [that day] was aborted." (*Id.* ¶ 22.)

There is no indication in the record that ICE has been able to remove Moses from the United States since December 15, 2015.

## DISCUSSION

### I. Legal Standard

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."

*Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). However, "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A writ of habeas corpus under 28 U.S.C. § 2241 is a proper method for challenging the lawfulness of continued detention by immigration authorities pending removal of an alien. *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

## II. Analysis

### A. Moses has failed to meet his burden to show that he is in custody in violation of *Zadvydas v. Davis*

Citing 8 U.S.C. § 1231(a)(6) and *Zadvydas v. Davis*, 533 U.S. 678 (2001), Moses first argues that he must be released from custody pending his removal because he has been detained for longer than six months and the government has not shown that it is significantly likely to remove him in the reasonably foreseeable future. (*See* Pet. ¶¶ 21–25.)

Section 1231 of Title 8 of the United States Code establishes a "removal period" within which the Attorney General must remove aliens subject to an order of removal. It states: "Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days . . . ." 8 U.S.C. § 1231(a)(1)(A). However, an alien's detention beyond that 90-day removal period may be permitted according to federal immigration law. For example, under 8 U.S.C. § 1231(a)(6), the Attorney General may detain certain removable aliens beyond the 90-day removal period, or release such aliens under terms of supervision. *Id.* (providing for additional post-removal-period detention of an alien who is removable for failing to maintain admissible nonimmigrant status,

violating conditions of entry, committing certain crimes, engaging in conduct that threatens national security, or whose release would present a risk to the community).

The Attorney General's power to extend detention beyond the 90-day removal period under § 1231(a)(6) is not limitless. The Supreme Court has held that § 1231(a)(6) does not authorize indefinite detention of an alien. *Zadvydas*, 533 U.S. at 689. Immigration officials may detain an alien beyond the removal period for "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* In *Zadvydas*, the Court determined that a removable alien's detention is presumptively reasonable under § 1231(a)(6) for six months after the alien is ordered removed. *Id.* at 701. If the alien is not removed within that six-month period, he can secure his release by meeting his burden to "provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future . . . ." *Id.* If the alien meets that burden, then the government must present evidence "sufficient to rebut that showing." *Id.*

*Zadvydas* did not address another statute that authorizes continued detention of an alien beyond the 90-day removal period. Section 1231(a)(1)(C) provides that: "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien . . . conspires or acts to prevent the alien's removal subject to an order of removal." "Subsequent to *Zadvydas*, numerous courts have held that, when an alien refuses to cooperate in securing his removal, he can be detained under § 1231(a)(1)(C) for longer than the six-month period that *Zadvydas* established as presumptively reasonable under § 1231(a)(6)." *Hydara v. Gonzales*, No. 07-cv-0941 PJS/JSM, 2007 WL 2409664, at *2 (D. Minn. Aug. 21, 2007), *aff'd sub nom. Hydara v. Doe*, 324 Fed. App'x 534 (8th Cir. 2009). "These courts have assumed that *Zadvydas* applies to aliens being detained under

§ 1231(a)(1)(C) and reasoned that, when an alien obstructs his removal, he cannot meet his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* (citing *Lema v. INS*, 341 F.3d 853, 856 (9th Cir. 2003); *Pelich v. INS*, 329 F.3d 1057, 1059–61 (9th Cir. 2003); *Davis v. Gonzales*, 482 F. Supp. 2d 796, 800–01 (W.D. Tex. 2006); *Powell v. Ashcroft*, 194 F. Supp. 2d 209, 212 (E.D.N.Y. 2002)). "The reasoning is that, where the timing of removal is controlled by an uncooperative alien rather than immigration officials, there is no meaningful way to ascertain the likelihood of removal." *Ndenge v. Gonzales*, No. Civ. 07-1726 MJD/JJG, 2008 WL 682091, at *2 (D. Minn. Mar. 6, 2008) (citing *Lema*, 341 F.3d at 856–57; *Hydara*, 2007 WL 2409664; and *Kanteh v. Ridge*, No. 05-313, 2005 WL 1719217 (D. Minn. June 30, 2005)). Courts have upheld extended post-removal-period detention under § 1231(a)(1)(C) when an alien who has been ordered removed fails to provide information to immigration authorities needed to secure the alien's removal, *see Pelich*, 329 F.3d at 1059–60 (discussing the petitioner's failure to provide information needed by Polish authorities to evaluate his citizenship status), and where an alien refuses to cooperate with ICE's efforts to remove him by behaving belligerently and aggressively toward law enforcement officials, *see Akande v. Horgan*, No. 11-cv-11913-NMG, 2012 WL 1207217 (D. Mass. Apr. 9, 2012) (considering the petitioner's recalcitrant behavior as a failure to cooperate with removal efforts).

It is undisputed in this case that ICE has detained Moses beyond the 90-day removal period and the 180-day presumptively reasonable period for detention under *Zadvydas*. However, Moses fails to meet his burden under *Zadvydas* to show that there is no significant likelihood of removal in the reasonably foreseeable future. The evidence in the record demonstrates that Moses has acted to prevent such removal. ICE has obtained a travel document

from the Nigerian Embassy, and has twice tried to remove Moses from the United States. Moses once refused to board a plane and later refused to even travel to the airport. He behaved uncooperatively and confrontationally each time ICE tried to remove him to Nigeria. He yelled at immigration officials and MSP Airport police. He escalated his aggressive behavior toward the officials each time they tried to remove him. He told officials that he would not go back to Nigeria. Rather than trying to force Moses onto a plane bound for Nigeria, ICE abandoned its efforts on both occasions. These actions demonstrate a refusal to cooperate with lawful removal efforts.

In his habeas petition Moses alleges that he "cooperated fully with all efforts by ICE to remove [him] from the United States," (Pet. ¶ 16), and in his reply he argues that, contrary to the evidence presented by the respondents, Moses did not behave belligerently toward officials attempting to remove him, (*see* Doc. No. 15, Pet'r's Reply 4). However, Moses presents no evidence to support these contentions. The Court is not persuaded that Moses has cooperated with ICE's lawful removal efforts. Because the only evidence before the Court demonstrates that Moses has acted to prevent his removal, he cannot meet his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future. *See Akande,* 2012 WL 1207217, at *1–3 (concluding that detention beyond the presumptively reasonable period under *Zadvydas* was appropriate pursuant to § 1231(a)(1)(C) where the petitioner refused to cooperate with ICE's removal efforts on more than one occasion by telling agents he would not board a plane, yelling loudly, curling up in a ball, refusing to walk to the gate at the airport, screaming obscenities and kicking an ICE agent).

Accordingly, Moses provides no basis for concluding that he is in custody in violation of the Constitution or laws of the United States under either the first or second claim for relief in his habeas petition.

**B. Moses has not shown that he is in custody in violation of his procedural due process rights under the Fifth Amendment**

In the third claim in his habeas petition, Moses asserts that he is in custody of the immigration officials in violation of his procedural due process rights. The exact contours of this claim are not immediately apparent. In the portions of the habeas petition relevant to this claim, Moses asserts the following:

> Under the Due Process Clause of the Fifth Amendment, an alien is entitled to a timely and meaningful opportunity to demonstrate that he should not be detained. Petitioner in this case has been denied that opportunity. ICE does not make decisions concerning aliens' custody status in a neutral and impartial manner. The failure of Respondents to provide a neutral decision-maker to review the continued custody of Petitioner violates Petitioner's right to procedural due process.

(Pet. ¶ 27.)[1] Further, Moses alleges that after he received notice of ICE's determination that he should remain in custody in June 2015, he wrote a letter to ICE headquarters in Washington, DC, on September 1, 2014, apparently arguing that he should be released. ICE later responded that it had reviewed his custody status and "'will not release him at this time'." (*Id.* ¶¶ 17–18.) In his reply, Moses argues that the presumptively reasonable 180-day period expired, "and additional detention was requested without due process and a consideration for bond or Secured release." (Pet'r's Reply 4.)

---

[1] It is not clear why Moses believes any continued-custody decision was made by something other than a neutral and impartial decision-maker. If Moses claims that his continued custody is the product of biased decision-making, there is no support in the record on which the Court could reach such a conclusion. Accordingly, the Court concludes that Moses is not entitled to a writ of habeas corpus due to any alleged bias.

Because Moses discusses the written decisions from ICE that he received relating to his continued-custody decisions (Pet. ¶¶ 17–18), and he emphasizes the respondents' alleged failure to provide a neutral decision-maker in the context of those custody reviews (Pet. ¶ 27), this Court construes Moses's procedural due process claim as follows. He alleges that his right to procedural due process entitles him to have continued-custody decisions made by an immigration judge or some other third-party rather than by ICE officials.

During deportation proceedings, aliens are entitled to due process of law under the Fifth Amendment. *Reno v. Flores*, 507 U.S. 292, 306 (1993). Procedural due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976); *Mohamed v. Gonzales*, 477 F.3d 522, 526 (8th Cir. 2007) (citing the same requirement in the context of removal proceedings).

Moses's procedural due process claim should be rejected. When immigration officials reach continued-custody decisions for aliens who have been ordered removed according to the custody-review procedures established in the Code of Federal Regulations, such aliens receive the process that is constitutionally required. *Mareya v. Mukasey*, No. 06-cv-4525 RHK/RLE, 2007 WL 4373012, at *10–13 (D. Minn. Dec. 12, 2007). In *Mareya*, the petitioner claimed that his right to procedural due process was violated as a result of the custody-review process employed by the immigration authorities. *Id.* at *9–13. The court examined the procedures required by the Code of Federal Regulations that immigration authorities use to conduct such custody reviews. *Id.* at *10 (describing in detail the manner in which continued custody decisions are made under 8 C.F.R. §241.4). The court concluded that by following those procedures, the immigration authorities provided the petitioner with the process by the Fifth Amendment. It rejected the petitioner's claims that the custody-review process was

constitutionally insufficient because the petitioner was not afforded review by a neutral decision-maker, such as an immigration judge, or the opportunity to cross-examine witnesses. *Id.* at *10–12. This Court agrees with the reasoning underlying the decision in *Mareya* and reaches the same conclusion here. The respondents in this case have offered evidence that ICE engaged in its required custody review process, and through that process determined that Moses should continue to remain in custody pending his removal. (Robinson Decl. ¶¶ 11, 14.) Moses has provided the Court with no basis to conclude that ICE failed to follow the applicable regulatory framework in reaching its decisions that he should be detained beyond the 90-day removal period. Absent some indication from Moses that ICE failed to comply with any of the specific requirements of that regulatory framework, we cannot conclude that Moses has been deprived of his Fifth Amendment right to procedural due process or is in custody in violation of the Constitution or laws of the United States. Accordingly, his third claim asserting a procedural due process violation should be denied.

**C. The Court cannot review the validity of a removal order**

Moses also raises an argument that appears to challenge the underlying determination that Moses could be detained beyond the 90-day removal period because he poses a risk to the community. (Pet'r's Reply 4 (arguing that the "only rationale" for ordering Moses detained was that he "is a threat to the public, which directly fly [sic] in the face of the actual court that heard the testimony in court and deemed [Moses] was not a threat by allowing him to be free in the state").)

If indeed Moses is attempting to use this habeas proceeding to contend that the immigration judge and the BIA should not have determined that he could be detained under 8 U.S.C. § 1231(a)(6) because he poses a danger to the public, this Court has no jurisdiction to

consider such a claim. An alien may not use a § 2241 habeas petition challenging the lawfulness of federal custody to seek review of an order of removal in a federal district court:

> Notwithstanding any other provision of law (statutory or nonstatutory) including section 2241 of title 28, or any other habeas corpus provision, . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter[.]

8 U.S.C. § 1252(a)(5). Consistent with this provision, we cannot review the underlying merits of the BIA's final removal order in this case.

### D. Conclusion

For all the foregoing reasons, this Court concludes that Moses has failed to show that he is in custody in violation of the United States Constitution or any provision of federal law. His habeas petition should, therefore, be denied.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that:

1. The habeas petition (Doc. No. 1) be **DENIED**; and

2. This matter be **DISMISSED**.

Date: April 12, 2016

s/ Jeffrey J. Keyes
JEFFREY J. KEYES
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14

days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.